FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 24, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATASHA LYNN BARNES, | No. 2:16-cv-00402-MKD |
| Plaintiff, | |
| vs. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 16, 17 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 16, 17. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 16) and grants Defendant's motion (ECF No. 17).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for supplemental security income benefits on March 6, 2013, alleging a disability onset date of April 19, 2010.  Tr. 140-45.  Benefits were denied initially, Tr. 97-100, and upon reconsideration.  Tr. 104-07.  Plaintiff appeared for a hearing before an administrative law judge (ALJ) on May 19, 2015.  Tr. 34-71.  On June 11, 2015, the ALJ denied Plaintiff's claim.  Tr. 14-29.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 6, 2013.  Tr. 19.  At step two, the ALJ found Plaintiff has the following severe impairments: borderline intellectual functioning; somatoform disorder; affective disorder; and personality disorder.  Tr. 19.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 21.  The ALJ then concluded that Plaintiff has the RFC

> to perform a full range of light work as defined in 20 CFR 416.967(b), except she can have no concentrated exposure to unprotected heights or moving mechanical parts; she may only perform simple, repetitive, and routine tasks with a reasoning level of two or less; she may only perform simple decision-making; and she may not have any contact with the public.

ORDER - 6

Tr. 22.  At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 25.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff can perform such as housekeeping, agricultural produce sorter, and cafeteria attendant.  Tr. 25.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since March 6, 2013, the date the application was filed, through the date of the decision.  Tr. 26.

On September 21, 2016, the Appeals Counsel denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed Plaintiff's symptom claims;

2.  Whether the ALJ properly weighed the medical opinion evidence; and

3.  Whether the ALJ properly concluded Plaintiff's impairments did not meet a Listing.

ECF No. 16 at 9-15.

ORDER - 7

**DISCUSSION**

**A. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in "discrediting [Plaintiff's] symptoms claims" arising from her mental impairments.[1]  ECF No. 16 at 9-13.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

_____

[1]  Plaintiff's arguments regarding the ALJ's treatment of Plaintiff's testimony center on the ALJ's decision regarding the extent of her symptoms arising from her mental impairments.  ECF No. 16 at 10.  Plaintiff does not appear to contest the ALJ's treatment of her testimony regarding the extent of her pain and symptoms caused by her non-severe physical impairments.  *See* Tr. 23.  Accordingly, the Court does not address this aspect of the ALJ's decision.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the court need not address an issue where the claimant "failed to argue [the] issue with any specificity in [his or her] briefing.")  Nevertheless, a review of the ALJ's reasoning and the rest of the record shows that the ALJ's reasoning in support of his decision according "some credit" to Plaintiff's pain and symptom testimony concerning her physical impairments is supported by clear and convincing reasons.

determine whether there is objective medical evidence of an underlying

impairment which could reasonably be expected to produce the pain or other

symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

"The claimant is not required to show that [her] impairment could reasonably be

expected to cause the severity of the symptom [she] has alleged; [she] need only

show that it could reasonably have caused some degree of the symptom." *Vasquez*

*v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of

malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

citations and quotations omitted). "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

must make a credibility determination with findings sufficiently specific to permit

the court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely credible." Tr. 23. With regard to her mental limitations, the ALJ "largely credit[ted]" Plaintiff's testimony finding that it "generally undermines her claim of total disability." Tr. 23. Plaintiff disagrees with this conclusion. This Court finds the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's claim of symptoms of disabling severity.

### 1. Activities of Daily Living

The ALJ found that Plaintiff's daily activities were inconsistent with any disabling limitations. Tr. 23. It is well-settled that a claimant need not be utterly

ORDER - 10

incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities ... does not in any way detract from her credibility as to her overall disability."). However, as in this case, even where activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113; s*ee also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility). Here, the ALJ referred to several activities of Plaintiff's daily living activities which he characterized as "very high-functioning" and found supported her testimony but undermined her claim of total disability. Tr. 23. These activities included being the primary caregiver for her baby, performing "all the cleaning and household chores for herself and boyfriend" (whom she lived with for over three years), and being able "to use the bus[,] etc." *Id.*; *see also* Tr. 21 (noting Plaintiff graduated from high

school, lives independently, is capable of bathing, dressing and toileting, and would spend up to 3 or 4 hours every two days performing chores). Plaintiff contends her failure to perform these activities with success illustrates her limitations rather than a conflict in the record. ECF No. 16 at 10-12. For example, Plaintiff notes her mother helped care for the baby and took custody of the baby a few months before her first birthday. *Id.*; *see also* Tr. 45-46.

The ALJ's findings regarding Plaintiff's activity level is consistent with Plaintiff's testimony and the remainder of the record, and therefore, substantial evidence supports the ALJ's finding that daily activities are inconsistent with allegations of disabling symptoms and limitations. To be sure, the record contains some contrary evidence. However, it is the function of the ALJ to resolve any ambiguities, and the Court finds the ALJ's assessment to be reasonable and supported by substantial evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

### 2. *Plaintiff's Statements Regarding Perceived Abilities*

The ALJ also acknowledged that Plaintiff's own testimony as to her limitations did not focus upon her mental impairments and Plaintiff testified she

believed she could perform a sit-down job fulltime. Tr. 23. Plaintiff faults the ALJ for having credited Plaintiff's testimony, specifically her statements concerning her perceived ability to work. ECF No. 16 at 10. Plaintiff claims the findings of Dr. Mabee and Dr. Arnold of "fair to poor insight" and limited abstract thinking "clearly indicate that Ms. Barnes' perception regarding her ability to rate her own functioning and forecast her ability to function is not reliable." *Id*.

In his credibility evaluation, the ALJ is seeking evidentiary factors which are relevant to a determination of whether Plaintiff's allegation of disabling symptoms are credible. Federal courts have long recognized that, in the context of mental illness, insight can play an important role in evaluating the claimant's credibility; and, by definition, a claimant with poor insight cannot be expected to understand the true nature of her impairments. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (recognizing that claimant's delay in seeking treatment for depression was not a sufficient basis to reject medical opinion diagnosing depression because "those afflicted [with depression] often do not recognize that their condition reflects a potentially serious mental illness"). There is no indication in the record of a tendency to overstate Plaintiff's abilities or that the ALJ failed to take into consideration the Plaintiff's limited insight. Plaintiff's testimony regarding her perceived ability to work, even if an optimistic self-assessment, is significant to the extent that the Plaintiff is willing and able to work, as that belief

indicates her allegation of symptoms precluding work are not credible.  It is the province of the ALJ, not the reviewing court, to evaluate credibility.  The ALJ is required to take the claimant's reports into account.  The Court finds no error in the ALJ's acknowledgement of the Plaintiff's testimony about her own perceived limitations.

### 3.  Lack of Treatment

Finally, the ALJ reasoned that Plaintiff's "failure to obtain any mental health treatment (or even mental health evaluation during the adjudicative period) suggests her mental health issues are not particularly serious." Tr. 23.  When a claimant receives only conservative or minimal treatment, it supports an adverse inference as to the claimant's credibility regarding the severity of her subjective symptoms.  *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999).  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *See Orn*, 495 F.3d at 638.  Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen*, 100 F.3d at 1465.  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental

impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Plaintiff testified she was in counseling as a juvenile and for a year thereafter at Frontier Behavioral Health until she was told she "didn't have to go back." Tr. 61-62; *see also* Tr. 327 (medical record reference to ongoing counseling). No records from Frontier Behavioral Health are part of the record, though there are references to counseling in the medical record. *See* Tr. 70; *see also* Tr. 40; Tr. 61-70; Tr. 205 (noting "difficulties with last counselor"); Tr. 259 (noting did not like counseling as a juvenile because "she felt that they only listened to her mother's side of the story."); Tr. 327-28; Tr. 330 (Jan. 27, 2015 note stating Plaintiff was not seeing a counselor and "not sure if she wants to do that again"); Tr. 336 (May 18, 2015 provider recommendation for counseling for depression and anxiety). Plaintiff testified she had talked to her doctor about resources for the homeless and was referred for counseling. Tr. 63. As Defendant points out, the majority of treatment records are for Plaintiff's physical complaints, not her mental health impairments. ECF No. 17 at 8-9.

Plaintiff does not challenge the ALJ's finding that Plaintiff did not obtain any mental health treatment. Instead, Plaintiff suggests lack of insight and lack of funds explain her failure to obtain treatment. ECF No. 16 at 12. The reason for

lack of mental health treatment is not obvious. Indeed, Plaintiff's somatoform disorder diagnosis would appear to increase the likelihood that Plaintiff would seek medical treatment, regardless of insight into the impairment. The fact that she did not continue to seek mental health treatment, despite the recommendations of her providers and her ability to do so, supports the ALJ's conclusions regarding Plaintiff's assertion of disabling symptoms. Alternatively, even if the failure to pursue mental health treatment was related to her limited resources and insight and would alone be insufficient to sustain an adverse credibility finding, any error is harmless because it does not invalidate the overall analysis of Plaintiff's symptoms. *See, e.g., Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

### 4. *Lack of Objective Medical Evidence*

Finally, the ALJ found that as to Plaintiff's depression, somatoform disorder and personality disorder, the objective medical evidence and evidence in the record overall did not suggest a greater restriction than imposed by the ALJ in his RFC. Tr. 23. Plaintiff contends the ALJ improperly relied upon the lack of objective evidence and the opinions of Dr. Arnold and Dr. Mabee undermine the ALJ's conclusion. ECF No. 16 at 12. Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the

only factor. *See Burch*, 400 F.3d at 680. Here, the Court notes that the ALJ set out, in detail, the medical evidence contradicting Plaintiff's claims of disabling mental and physical limitations; and ultimately concluded that the assessed RFC accounts for Plaintiff's restrictions in concentration, comprehension, and persistence. Tr. 22-25; *see also* Tr. 205 (June 2012 assessment by Dr. Arnold estimating impairment lasting six months and recommending among other interventions, counseling, medication consultation and management, and vocational rehabilitation); Tr. 251 (November 2012 provider notes reflecting Plaintiff was in no acute physical distress and was mentally "oriented to time, place, person and situation); Tr. 255 (normal abdominal ultrasound); Tr. 257 (provider impression indicating "abdominal pain unexplained by any colonoscopic abnormality, without evidence of inflammatory bowel disease"); Tr. 274 (March 2013 provider note indicating Plaintiff and her mother advised Plaintiff had stopped taking her medications); Tr. 275-76 (March 2013 provider note recommending treatment for depression while noting in psychiatric remarks that Plaintiff "appears comfortable" and has "normal attention span and concentration"); Tr. 305 (May 2013 imaging report noting "[p]atient needs disability determination xrays" and impression of right knee negative); 306 (imaging of lumbar spine showing "mild" left convex scoliosis; "[o]therwise unremarkable"); Tr. 310 (May 2013 consultative physical examination

ORDER - 17

"unremarkable"); Tr. 327-28 (October 2014 provider note noting depression since birth of baby and medication management issues; listing medications in conjunction with depression including Wellbutrin (150 mg) and Zoloft (increased dosage from 50 mg to 100 mg), and with insomnia including Desyrel (50 mg)); Tr. 330 (January 2015 provider note stating that patient indicates depression medication works well, but not seeing counselor and still has some episodes of feeling "down"). In this case, the lack of objective evidence belies Plaintiff's claimed degree of disability.

Accordingly, the Court concludes that the ALJ articulated specific, clear and convincing reasons supported by substantial evidence for discrediting Plaintiff's symptom complaints.

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the opinions of examining psychologists W. Scott Mabee, Ph.D. and Dr. John Arnold, Ph.D, both of whom performed psychological/psychiatric evaluations for the State Department of Social and Health Services prior to Plaintiff's application for supplemental security income benefits. ECF No. 16 at 14-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830–31).

### 1. W. Scott Mabee, Ph.D.

In January and February 2013, Dr. Mabee performed a psychological/ psychiatric evaluation, Tr. 258-269, and diagnosed undifferentiated somatoform disorder, generalized anxiety disorder with depressive features, borderline personality disorder, and borderline intellectual functioning. Tr. 261. Regarding

ORDER - 19

Plaintiff's functioning, Dr. Mabee specifically opined that Plaintiff was severely limited in two major areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances, and (2) the ability to complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 262. Dr. Mabee found Plaintiff was markedly impaired in (1) understanding, remembering and persisting in tasks by following detailed instructions; and (2) communicating and performing effectively in a work setting. *Id*. There were seven other areas where she would have moderate limitations for work related activities. *Id*. The vocational expert testified there would be no work for an individual with these limitations. Tr. 69-70. The ALJ gave this opinion little weight. Tr. 24. Because Dr. Mabee's opinion was contradicted by state agency psychological consultant, Diane Fligstein, Tr. 92-94, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Mabee's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ assigned little weight to Dr. Mabee's opinion because in analyzing the MMPI-2-RF psychological test, Dr. Mabee found Plaintiff "appeared to have some True response inconsistency" and stated that it was "likely that she reported more symptoms than [were] objectively present." Tr. 24; *see* Tr. 260. Dr. Mabee concluded this invalidated Plaintiff's scores on the somatic scales and deemed Plaintiff's MMPI-2-RF profile "questionably valid." Tr. 260. The ALJ

also noted that she also scored "very low" on the WAIS-IV and WMS-IV tests, Tr. 23, and that IQ testing performed earlier in life yielded scores much higher "casting further doubt on the validity" of her later IQ test. Tr. 22. Evidence that a claimant exaggerated her symptoms is a specific, legitimate reason to reject the doctor's conclusions. *Thomas*, 278 F.3d at 958. This alone was a specific and legitimate reason supported by the record for giving Dr. Mabee's opinion little weight.

Second, the ALJ noted that Dr. Mabee had examined Plaintiff on only one occasion. Tr. 24. When considering the medical evidence, the ALJ will consider the length and extent of the treatment relationship. 20 C.F.R. § 416.927(c)(2) (eff. Aug. 24, 2012). However, generally, the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The frequency of examination is a factor the ALJ could consider, however, it is not a legitimate reason to reject Dr. Mabee's opinion in favor a nonexamining source who has no examining or treating relationship with Plaintiff. Here, the error was harmless because the ALJ gave other specific and legitimate reasons supported by substantial evidence.

Third, the ALJ opined that Dr. Mabee's limitations were "not in line with the objective medical evidence of claimant's mental impairments." Tr. 24. An ALJ may discredit a physician's opinions that are unsupported by objective medical

findings. *See Batson*, 359 F.3d at 1195 (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings"). The objective evidence of Plaintiff's mental impairments, including the mental exam findings of Dr. Arnold and clinical observations of Plaintiff's treating providers, support the ALJ's conclusion. *See, e.g.,* Tr. 205 (Dr. Arnold's findings that Plaintiff could "remember locations and simple work like tasks"; "understand, remember and carryout simple verbal and written instructions"; "concentrate and attend for short to moderate periods"; "ask simple questions, request assistance and accept instructions"; "adhere to basic standards of neatness and cleanliness"; and "use the bus."); Tr. 315 (treatment provider noting "[n]ormal insight"); Tr. 275 (treatment note indicating "normal attention span and concentration"). The Court concludes that despite the relatively limited objective evidence available, this was a specific and legitimate reason, supported by substantial evidence in the record.

Finally, the ALJ rejected Dr. Mabee's opinion because there was "little support" for the limitations assessed either within Dr. Mabee's evaluation or the medical record as a whole. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228. An ALJ is not obliged to credit medical opinions that are unsupported by the medical source's own data.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, the ALJ

properly concluded that Dr. Mabee's extreme limitations were unsupported by his

evaluation and clinical findings.  For example, Dr. Mabee's mental status

examination (MSE) observed largely normal results, with limitations noted in

memory, fund of knowledge, and abstract thought.  Tr. 263–65.  While the MSE

results are not necessarily inconsistent with Dr. Mabee's assessed limitations,

neither the MSE nor Dr. Mabee's narrative based upon the clinical interview, Tr.

259-60, explain, for example, the assessed "severe" limitation in the ability to

persist without interruption from psychologically based symptoms.  Furthermore,

the record supports the ALJ's conclusion that the record contains little evidence

that Plaintiff's mental impairments are disruptive to the Plaintiff's ability to work.

Tr. 23.  For instance, the medical record reflects Plaintiff was prescribed

medication to treat depression after the birth of her baby, Tr. 327, and while it

worked for a while she still reported episodes where she felt "down."  Tr. 330.

Plaintiff was not seeing a counselor and she was uncertain whether the she wanted

to participate in future counseling.  Tr. 330.  Plaintiff reported she did not like her

mental health provider.  Tr. 332.  The ALJ also gave substantial weight to the July

8, 2013 opinion of Diane Fligstein, Ph.D., Tr. 92-94, who after review of the

record, opined Plaintiff had moderate limitations, but was capable of simple,

routine tasks.  Tr. 24.

Overall, regardless of evidence that could be interpreted more favorably to Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld. *See Burch*, 400 F.3d at 679. The lack of overall support in the record was a specific and legitimate reason to accord Dr. Mabee's opinion less weight. *See Tommasetti*, 533 F.3d at 1041 (noting that an "incongruity" between a doctor's opinion and his medical records may suffice as a specific and legitimate reason for rejecting that doctor's opinion); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a contrary opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record).

### 2. John Arnold, Ph.D.

On June 1, 2012, ten months prior to date of Plaintiff's application, Dr. Arnold also completed a psychological/psychiatric evaluation of Plaintiff for the state Department of Social and Health Services. Tr. 204-213. The PAI test results were deemed invalid because Plaintiff's "score exceeded the cutoff for profile validity." Tr. 207. Dr. Arnold remarked that Plaintiff's "psychological insight," comprehension, and concentration are "low." Tr. 205, 207. Dr. Arnold opined that, for a period of 6 months, Plaintiff's symptoms "will negatively impact her overall job performance," Tr. 205, yet he believed vocational training or services would minimize or eliminate barriers to employment. *Id*. As for Plaintiff's

functional capacity, Dr. Arnold opined Plaintiff could: "remember locations and simple work like tasks"; "understand, remember and carryout simple verbal and written instructions"; "concentrate and attend for short to moderate periods"; "ask simple questions, request assistance and accept instructions"; "adhere to basic standards of neatness and cleanliness"; and "use the bus." Tr. 205. Dr. Arnold recommended counseling, medication management, a physical exam, IQ testing, and vocational rehabilitation because in his opinion, "without intervention it is not likely she will improve to any significant degree." Tr. 205.

Plaintiff contends the ALJ erred by failing to assign weight to Dr. Arnold's opinion. ECF No. 16 at 15. The ALJ's failure to explicitly assign weight to Dr. Arnold's opinion is harmless. Plaintiff fails to adequately explain how, if assigned weight, this opinion would have changed the ALJ's ultimate determination. *See* ECF No. 18 at 7. For example, Plaintiff has not identified any limitation assessed by Dr. Arnold that was not incorporated into the RFC. This Court will decline to reverse an ALJ's decision on account of harmless error, which is defined as an error that is "inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1111, 1115. Although the ALJ did not explicitly state the weight given to Dr. Arnold's assessment, the ALJ specifically referred to Dr. Arnold's opinion and summarized a portion of it in his step two analysis. Tr. 20. The ALJ reasonably recognized Dr. Arnold's 2012 opinion was that Plaintiff

ORDER - 25

would be impaired for six months. Tr. 20. Moreover, while the ALJ could have explained his reasoning more thoroughly, it is reasonable to infer that the ALJ considered Dr. Arnold's opinion when he formulated Plaintiff's RFC, because the RFC is consistent with Dr. Arnold's opinion. Tr. 22 (finding Plaintiff capable of performing simple, repetitive, and routine tasks and simple decision-making); s*ee Monguer v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (holding that, where the ALJ discusses a piece of evidence in a manner which indicates that he is aware of the evidence, it is reasonable to infer that he considered that evidence in forming his conclusions regarding the plaintiff's ability to work). Therefore, because Plaintiff has failed to explain how Dr. Arnold's opinion, if assigned any weight, would have changed the ALJ's ultimate findings, the Court declines to find error.

### C. Listing 12.05

Plaintiff admits her challenge to the ALJ's determination that Plaintiff did not meet Listing 12.05 is contingent upon a finding of harmful error in regard to the aforementioned issues. ECF No. 18 at 7. Accordingly, it lacks merit. *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

### CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful error.

**IT IS ORDERED**:

ORDER - 26

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **GRANTED**.

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and CLOSE THE FILE.

DATED January 24, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE